Case 4:20-cv-04373   Document 70   Filed on 03/02/22 in TXSD   Page 1 of 10

United States District Court
Southern District of Texas
**ENTERED**
March 02, 2022
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| MARIA LUISA MIRELES-POULAT, § § Plaintiff. § § VS. § TRANSAMERICA LIFE INSURANCE § COMPANY, § § Defendant. § | CIVIL ACTION NO. 4:20-cv-04373 |

### MEMORANDUM AND RECOMMENDATION

Pending before me are competing motions for summary judgment filed by Plaintiff Maria Luisa Mireles-Poulat (Dkt. 38) and Third-Party Defendant Ricardo Ibrahim-Hakim (Dkt. 55). After carefully reviewing the motions, the parties' briefing, and the applicable law, and for the reasons discussed below, I recommend that Maria Luisa Mireles-Poulat's Motion for Summary Judgment be **GRANTED** and Ricardo Ibarahim-Hakim's Motion for Summary Judgment be **DENIED**.

### FACTUAL BACKGROUND

This case concerns a dispute over life insurance proceeds. In 2010, Transamerica Life Insurance Company ("Transamerica") issued Samy Ibrahim-Hakim ("Samy") a life insurance policy (the "Policy"). Samy named his wife, Maria Luisa Mireles-Poulat ("Mireles-Poulat"), as the Policy's sole beneficiary, nominating his brother, Ricardo Ibrahim-Hakim ("Ricardo") as a "contingent beneficiary." Dkt. 38-2 at 40. Relevant to the underlying motions, the Policy provides:

- "**You** and **your** means the Owner of this policy." *Id.* at 13
- "**Owner of the Policy** -- . . . . The Insured will be the Owner, unless someone else is named as the Owner in the application, or otherwise in accordance with this policy." *Id.* at 14
- "**How to Change Owner** -- You may change the Owner while the Insured is living by notifying us in a form and manner acceptable to us. The change will not be effective until we record it at our Administrative Office." *Id.*

- "**How to Change a Beneficiary** -- You may change the designated Beneficiary while the Insured is living by notifying us in a form and manner acceptable to us. The change will not be effective until we record it at our Administrative Office." *Id*. at 15.

In June 2017, Samy created an irrevocable life insurance trust,[1] the Samy Ibrahim Life Insurance Trust (the "SILI Trust"). He named Mireles-Poulat as the sole trustee and their four children as beneficiaries. By the trust agreement's express terms, Samy "relinquish[ed] and assign[ed] to the Trustee all rights, incidents of ownership and powers in or with respect to any such policies of insurance which have not already been assigned to the Trustee or which have not been expressly withheld by [Samy] and will, at the request of the Trustee, execute such instruments as may be required to effectuate or give notice of this assignment and relinquishment." Dkt. 38-3 at 25.

The summary-judgment record contains a "Transfer of Ownership Request Form," by which Samy requested that Transamerica transfer ownership of the Policy to the SILI Trust. Nothing on the face of the transfer request indicates when Samy sent it to Transamerica, but the signatures of Samy, Mireles-Poulat, and their witness are all dated November 7, 2017. *See* Dkt. 43-1 at 2.

By letter dated March 22, 2018, Transamerica acknowledged its transfer of the Policy's ownership to the SILI Trust, writing, "[w]e received your requested change and have recorded it as submitted." Dkt. 38-5 at 2. Transamerica's letter further provided:

Our records have been revised to read as follows:

New Owner(s): Samy Ibrahim Life Insurance Trust dtd 06302017
Trustee(s): Maria Luisa Mireles Poulat
Previous Owner(s): Samy Ibrahim Hakim

*Id*.

A few months later, on April 5, 2018, Giovanna Chapa ("Chapa"), an agent at Global Insurance Agency, Inc., sent two e-mails to Transamerica customer service within three hours of each other. Chapa's first e-mail, sent at 11:46 a.m., read:

---

[1] An irrevocable life insurance trust is an estate-planning tool, the primary purpose of which is to shield policy proceeds from estate taxes upon the insured's death.

> Dear Sirs:
>
> As requested in your letter dated March 22nd,[2] attached you will find corrected forms for the Transfer of Ownership and Trust Certification for each of the above[-]referenced policies.
>
> Please process and email or fax confirmations once these requests are completed.

Dkt. 42-4 at 2. Although the e-mail indicates two documents were attached to Chapa's e-mail, neither is included in the record.

At 2:17 p.m., Chapa sent a second e-mail, again to Transamerica customer service, that read:

> Please stop the transfer of Ownership for these two policies and cancel the forms.
>
> Do not process these attached changes sent earlier today. The Insureds have decided to continue being the owners of the policies.

*Id.*

On May 7, 2018, Transamerica issued a similar change-in-ownership acknowledgment letter to that which it issued on March 22, 2018, only this time, the letter denoted a transfer of ownership from the SILI Trust back to Samy:

> We have received your requested change and have recorded it as submitted.
>
> Our records have been revised to read as follows:
>
> New Owner(s): Samy Ibrahim Hakim
>
> Previous Owner(s): Samy Ibrahim Life Insurance Trust dated 06/30/2017

Dkt. 41-4 at 2.

In October 2018, Samy submitted to Transamerica a "Beneficiary Change Form," purporting to name his brother, Ricardo, as the Policy's primary beneficiary. Samy and Mireles-Poulat divorced in April 2019. Samy passed away on October 7, 2020. The next day, Ricardo contacted Transamerica and initiated a claim to the life

---

[2] As an aside, it is unclear what "March 22nd" letter Chapa is referring to in her e-mail. The only letter dated March 22 in the summary-judgment record is Transamerica's letter acknowledging its transfer of the Policy's ownership to the SILI Trust. There is no letter dated March 22 (or any other date) requesting corrected forms for the "Transfer of Ownership and Trust Certification."

3

insurance proceeds. Shortly thereafter, Mireles-Poulat, as trustee, initiated a claim on behalf of the SILI Trust.

## PROCEDURAL HISTORY

Mireles-Poulat filed the underlying action in Texas state court, asserting a breach-of-contract claim against Transamerica stemming from her disputed claim to the Policy's proceeds. On December 30, 2020, Transamerica timely removed the action to this Court and filed an interpleader counterclaim joining two parties who also claimed an interest in the life insurance proceeds—Ricardo and AXA Seguros S.A. de C.V. ("AXA").[4]

Mireles-Poulat, individually and as trustee of the SILI Trust, filed crossclaims against Ricardo and AXA, in which she seeks declarations that she, as trustee of the SILI Trust, is the Policy's beneficiary and that no other party is entitled to Policy proceeds. In April 2021, Mireles-Poulat moved for summary judgment against Ricardo.[5] According to Mireles-Poulat, only the Policy's owner can change the beneficiary under its express terms. Because Samy transferred ownership of the Policy to the SILI Trust in November 2017, Mireles-Poulat argues that Samy was unable to name Ricardo as a beneficiary in October 2018. Thus, Mireles-Poulat concludes that Samy's later-attempted change of beneficiary to Ricardo was ineffective and of no legal consequence.

On May 17, 2021, Ricardo filed his Response in Opposition to Mireles-Poulat's Motion for Summary Judgment. *See* Dkt. 41. That same day, Ricardo also filed a motion to conduct additional discovery under Rule 56(d) of the Federal Rules of Civil Procedure. *See* Dkt. 42. Months later, on January 20, 2022, Ricardo filed a Motion for Summary Judgment against Mireles-Poulat. *See* Dkt. 55. For the most part, Ricardo's

---

[4] The Court granted Transamerica interpleader relief on November 24, 2021, instructing it to deposit the Policy's proceeds into the registry of the Court. Dkt. 53. After doing so in December 2021, Transamerica was dismissed from the case. *See id.* AXA has filed a crossclaim for declaratory relief, seeking, among other things, declarations that it is entitled to the Policy's proceeds and has priority over any beneficiary claiming an interest in the same. *See* Dkt. 17.

[5] Mireles-Poulat has separately moved for summary judgment against AXA. *See* Dkt. 54. I do not address that motion in this opinion.

4

arguments for granting summary judgment in his favor mirror those he raised in opposition to Mireles-Poulat's summary-judgment motion.

On January 28, 2022, I held a hearing to discuss Ricardo's requested discovery, at which Ricardo notified me that he had conducted the discovery necessary to oppose Mireles-Poulat's Motion for Summary Judgment, mooting his request. I granted Ricardo leave to supplement his summary-judgment briefing.

Ricardo's supplemental briefing simply directs me to Transamerica's and AXA's responses to his discovery requests. However, the briefing itself is all of three paragraphs and does little if anything to explain how these discovery responses bolster his arguments. Indeed, Ricardo simply proclaims that the interrogatory answers "support" paragraphs 2, 12, 16, 17, 19, 20, and 21 of his Response.[6] *See* Dkt. 63 at 1.

Fairly summarized, Ricardo contends that any request to change the Policy's owner became effective when Transamerica recorded the request at its Administrative Office. Here, the record evidence conclusively establishes that Transamerica recorded two changes in ownership, the latter of which transferred ownership from the SILI Trust back to Samy. A short time later, Samy, as the Policy's purported owner, named Ricardo as the Policy's beneficiary. As further proof of his entitlement to the Policy's proceeds, Ricardo points to Transamerica's own records, which confirm that he is currently listed as the Policy's primary beneficiary. In the alternative, Ricardo argues that Samy and Mireles-Poulat's divorce in April 2019 rendered her designation as the Policy's beneficiary ineffective. Therefore, as a matter of law, Ricardo claims, "the proceeds of the policy are payable to the named alternative beneficiary." Dkt. 55 at 9–10 (quoting TEX. FAM. CODE § 9.301(b)). In other words, the divorce elevated Ricardo from contingent beneficiary to primary beneficiary.

---

[6] Four days after the Court-imposed deadline to supplement his Response, Ricardo filed four additional documents, labeled Exhibits J, K, L, and M. *See* Dkt. 65. The unverified documents are hundreds of pages in length, and Ricardo does not attempt to specify a single page that is relevant to either of the motions at issue.

## LEGAL STANDARD

A. **SUMMARY JUDGMENT**

Summary judgment is appropriate "if the movant shows there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A dispute of material fact is "genuine" if the evidence would allow a reasonable jury to find in favor of the nonmovant. *See Rodriguez v. Webb Hosp. Corp.*, 234 F. Supp. 3d 834, 837 (S.D. Tex. 2017).

The moving party bears the burden of demonstrating the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). Once satisfied, the burden shifts to the nonmovant to show the existence of a genuine fact issue for trial. *See id.* at 324. To do so, the "nonmovant must identify specific evidence in the record and articulate how that evidence supports that party's claim." *Brooks v. Houston Indep. Sch. Dist.*, 86 F. Supp. 3d 577, 584 (S.D. Tex. 2015).

In ruling on a motion for summary judgment, I must construe "the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor." *Cadena v. El Paso Cnty.*, 946 F.3d 717, 723 (5th Cir. 2020). On cross-motions for summary judgment, I review each party's motion independently, viewing the evidence and inferences in the light most favorable to the nonmoving party. *See Ford Motor Co. v. Tex. Dep't of Transp.*, 264 F.3d 493, 498 (5th Cir. 2001).

B. **RULES OF CONTRACT INTERPRETATION**

Texas's rules of contract interpretation apply to this dispute.[7] "The primary concern of a court in construing a written contract is to ascertain the true intent of the parties as expressed in the instrument." *Nat'l Union Fire Ins. Co. v. CBI Indus.*, Inc., 907 S.W.2d 517, 520 (Tex. 1995). Terms are given their "ordinary and generally

---

[7] Supplemental jurisdiction "extend[s] to cross-claims properly asserted under Rule 13(g), including those filed between competing claimants in a Rule 22 interpleader." *Travelers Ins. Co. v. First Nat'l Bank*, 675 F.2d 633, 638 (5th Cir. 1982). A federal court exercising supplemental jurisdiction over state-law claims must apply the substantive law of the state in which it sits. *See Sommers Drug Stores Co. Emp. Profit Sharing Tr. v. Corrigan*, 883 F.2d 345, 353 (5th Cir. 1989).

accepted meaning unless the contract directs otherwise." *Great Am. Ins. Co. v. Primo*, 512 S.W.3d 890, 893 (Tex. 2017). Courts must also "examine the entire agreement and seek to harmonize and give effect to all provisions so that none will be meaningless." *Gilbert Tex. Constr., L.P. v. Underwriters at Lloyd's London*, 327 S.W.3d 118, 126 (Tex. 2010). *See also Heritage Res., Inc. v. NationsBank, Co.*, 939 S.W.2d at 121 ("We presume that the parties to a contract intend every clause to have some effect.").

When considering the propriety of a grant of summary judgment in a case involving the construction of an insurance policy, courts must determine whether the applicable terms of the policy are ambiguous. *See Canutillo Indep. Sch. Dist. v. Nat'l Union Fire Ins. Co.*, 99 F.3d 695, 700 (5th Cir. 1996). The determination of ambiguity is a question of law. *See State Farm Lloyds v. Page*, 315 S.W.3d 525, 527 (Tex. 2010). If the language lends itself to a clear and definite legal meaning, the contract is not ambiguous, and courts must enforce it as written. *See Am. Mfrs. Mut. Ins. Co. v. Schaefer*, 124 S.W.3d 154, 157 (Tex. 2003). "If, however, the language of a policy or contract is subject to two or more reasonable interpretations, it is ambiguous." *Kelley-Coppedge, Inc. v. Highlands Ins. Co.*, 980 S.W.2d 462, 464 (Tex. 1998). An ambiguity does not arise merely because a party offers a conflicting alternative interpretation, *see Great Am. Ins.*, 512 S.W.3d at 893, nor does the parties' disagreement about the policy's meaning create an ambiguity. *See Kelley-Coppedge, Inc.*, 980 S.W.2d at 465. Rather, "[o]nly when, after applying the applicable rules of construction, a contract term is susceptible of two or more reasonable interpretations will the term be ambiguous." *Id.*

## ANALYSIS

This case boils down to a single question: Did Samy transfer ownership of the Policy to the SILI Trust? As explained below, the answer is straightforward—yes.

Transamerica's records conclusively establish that Samy transferred ownership of the Policy to the SILI Trust in November 2017. *See* Dkt. 63-1 at 7 (responding to Samy's interrogatory: "Transamerica's records indicate that Samy Ibrahim Hakim was the owner of the policy during the entirety of the period of time identified in this interrogatory **except for the period from November 11, 2017, to April 5,**

7

**2018**." (emphasis added)). Ricardo even acknowledges this fact in his own Motion for Summary Judgment, though he attempts to sidestep the issue by arguing that Transamerica's records also show Samy later transferred ownership of the Policy back to himself in April 2018. *See* Dkt. 55 at 7. But Ricardo fails to harmonize his argument with the Policy's unambiguous language—only the Policy's owner can transfer ownership or change the Policy's designated beneficiary. *See* Dkt. 38-2 at 14–15. Thus, once Samy ceded ownership of the Policy in November 2017, he no longer had the authority to rescind his decision (in April 2018) or designate Ricardo as the primary beneficiary (in October 2018).

Ricardo also appears to argue that a fact question exists as to whether Transamerica properly recorded the Transfer of Ownership Request Form,[8] dated November 7, 2017, at its Administrative Office—a requirement to effectuate a change in ownership. *See* Dkt. 41 at 5; Dkt. 38-2 at 14 (providing that a transfer in ownership is not effective until Transamerica "record[s] it at [its] Administrative Office"). But he did not ask Transamerica to confirm as much by interrogatory. Instead, Ricardo asked whether Transamerica recorded the transfer-of-ownership acknowledgment letter, dated March 22, 2018, at its Administrative Office. Dkt. 63-1 at 6. The transfer-of-ownership acknowledgment letter is just that—an acknowledgment that a change in ownership has occurred. It is immaterial whether Transamerica ever recorded the letter itself at its Administrative Office. As Transamerica's answer to Interrogatory No. 12 explains, though the March 22, 2018 letter was never "recorded," it "is an acknowledgement . . . of the submission **and recordation** of a transfer of ownership request dated November 11, 2017." *Id.* (emphasis added).

While no party points it out, it appears Transamerica mistakenly wrote "November 11" when converting "11/7/17" into "Month Day, Year" format. Regardless, when viewing the evidence in the light most favorable to Ricardo, there is no doubt that Samy transferred ownership of the Policy to the SILI Trust in November 2017—

---

[8] The Policy also requires any change-in-ownership request be "in a form and manner acceptable to [Transamerica]." Dkt. 38-2 at 14. Without question, utilizing Transamerica's own "Transfer of Ownership Request Form" satisfies this requirement. *See* Dkt. 43-1.

8

whether that transfer was recorded on November 7 or 11. This stripped Samy of the ability to designate Ricardo as a beneficiary in October 2018. It is of no legal effect that Transamerica's records indicate Samy was the Policy's owner at the time he attempted to name Ricardo as the Policy's beneficiary. Rather, the power to transfer ownership or change beneficiaries rested solely with Mireles-Poulat, as trustee of the SILI Trust. *See* Dkt. 38-2 at 14–15.

As for Ricardo's claim that the Samy and Mireles-Poulat's divorce in April 2019 rendered the Policy's designation of Mireles-Poulat as its beneficiary ineffective, Ricardo relies on § 9.301 of the Texas Family Code, which provides, in relevant part:

(a) If a decree of divorce or annulment is rendered after an insured has designated the insured's spouse as a beneficiary under a life insurance policy in force at the time of rendition, a provision in the policy in favor of the insured's former spouse is not effective unless:

(1) the decree designates the insured's former spouse as the beneficiary;

(2) the insured redesignates the former spouse as the beneficiary after rendition of the decree; or

(3) the former spouse is designated to receive the proceeds in trust for, on behalf of, or for the benefit of a child or a dependent of either former spouse.

(b) If a designation is not effective under Subsection (a), the proceeds of the policy are payable to the named alternative beneficiary or, if there is not a named alternative beneficiary, to the estate of the insured.

TEX. FAM. CODE § 9.301(a)–(b).

Mireles-Poulat raises various arguments as to why § 9.301's is not applicable. But even assuming that it is, Mireles-Poulat "was designated to receive the proceeds in trust for, on behalf of, or for the benefit of" her former spouse's children—thus, falling squarely within the maw of § 9.301(a)(3)'s exception. *See* TEX. FAM. CODE. § 9.301(a)(3); Dkt. 38-3 at 5 (providing that "[t]he proceeds of any life insurance policies . . . which, at the time of transfer to the [SILI Trust], were the community or separate property interests of [Mireles-Poulat], shall be distributed to [Samy's] descendants" upon Samy's death).

## CONCLUSION

For the foregoing reasons, I recommend that Maria Luisa Mireles-Poulat's Motion for Summary Judgment (Dkt. 38) be **GRANTED** and Ricardo Ibarahim-Hakim's Motion for Summary Judgment (Dkt. 55) be **DENIED**.

The Clerk shall provide copies of this Memorandum and Recommendation to the respective parties who have 14 days from the receipt to file written objections pursuant to Federal Rule of Civil Procedure 72(b) and General Order 2002–13. Failure to file written objections within the time period mentioned shall bar an aggrieved party from attacking the factual findings and legal conclusions on appeal.

SIGNED this 2nd day of March 2022.

ANDREW M. EDISON
UNITED STATES MAGISTRATE JUDGE