United States District Court
Southern District of Texas

**ENTERED**

April 20, 2022

Nathan Ochsner, Clerk

### UNITED STATES DISTRICT COURT
### SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

| | | |
|---|---|---|
| MARIA LUISA MIRELES-POULAT, | § | |
| | § | |
| Plaintiff. | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. 4:20-cv-04373 |
| | § | |
| TRANSAMERICA LIFE | § | |
| INSURANCE COMPANY, | § | |
| | § | |
| Defendant. | § | |

### MEMORANDUM AND RECOMMENDATION

Pending before me is Plaintiff Maria Mireles-Poulat's Motion for Summary Judgment Against AXA Seguros, S.A. de C.V. Dkt. 54. After carefully reviewing the motion, the parties' briefing, and the applicable law, and for the reasons discussed below, I recommend that the motion be **GRANTED**.

### BACKGROUND

This case involves two distinct disputes over life insurance proceeds. The first dispute is who qualifies as the beneficiary of a Transamerica Life Insurance Company ("Transamerica") policy (the "Policy") insuring the life of Samy Ibrahim-Hakim ("Samy"). Samy died on October 7, 2020. Both his brother, Ricardo Ibrahim-Hakim ("Ricardo"), and his ex-wife, Maria Luisa Mireles-Poulat ("Mireles-Poulat"), as the sole trustee of the Samy Ibrahim Life Insurance Trust (the "SILI Trust"), claim an interest in the Policy. Mireles-Poulat contends that ownership of the life insurance policy was transferred to the SILI Trust, and under the express terms of that trust, Samy and Mireles-Poulat's four children are the Policy's beneficiaries. Ricardo, on the other hand, argues that Samy, as the Policy's owner, made him the primary beneficiary. In March of this year, I held that the SILI Trust owned the Policy, and Ricardo possessed no interest in the life insurance proceeds. *See Mireles-Poulat v. Transamerica Life Ins. Co.*, No. 4:20-CV-04373, 2022 WL 658771, at *1 (S.D. Tex. Mar. 2, 2022).

The second dispute is whether AXA Seguros, S.A. de C.V. ("AXA") is entitled to any portion of the life insurance proceeds based upon its claim that some of its loan proceeds were used to make premium payments for the Policy. To put this second dispute, which is the subject of Mireles-Poulat's Motion for Summary Judgment against AXA, into proper perspective, I provide the following relevant background facts:

In 2010, Transamerica issued the Policy to Samy. Roughly six years later, in early 2016, Samy approached AXA with a business plan to develop a large housing project on a tract of land outside of Mexico City. Samy, through Paragroup Consultoria, S.C. ("Paragroup"),[1] borrowed $15.5 million from AXA in March 2016, using the land as collateral. *See* Dkt. 64 at 2–3. Under the terms of the loan agreement, Paragroup was to repay AXA in two years.

Two premium payments were made on the Policy after the AXA loan closed: (1) $16,356 on March 18, 2016; and (2) $33,156 on March 8, 2017.

AXA maintains that when the loan matured in 2018, it came to light that Samy had grossly misrepresented the valuation for the tract of land—indicating it was worth approximately $24 million when its actual value was a little north of $2 million.

AXA has since sued Samy and Mireles-Poulat in Texas state court, alleging Samy fraudulently convinced AXA to loan him $15.5 million by forging the valuation of the tract of land. *See* Cause No. 19-07-09268; *AXA Seguros, S.A. de C.V. v. Samy Ibrahim-Hakim, et al.*, in the 410th Judicial District Court for Montgomery County, Texas. In that lawsuit, AXA claims, among other things, that Samy took steps to ensure he would be essentially judgment-proof by transferring his assets to Mireles-Poulat. *See* Dkt. 19-1 at 8. That lawsuit is still pending. *See* Dkt. 19.

---

[1] In 2004, Samy and Ricardo established Paragroup. In February 2016, Ricardo sold most of his stake in Paragroup to Samy and the rest to a third party. By March of 2016, Samy became Paragroup's sole director and held a 95 percent ownership interest.

AXA also sued Paragroup and Samy in Mexico, obtaining a judgment against them for a little over $16.5 million—the loan's principal balance plus 16 percent per annum interest—which was later affirmed on appeal. In August 2021, AXA moved to enforce the foreign judgment in its state-court proceeding against Samy and Mireles-Poulat. *See* Dkt. 54-8.

## PROCEDURAL HISTORY

Mireles-Poulat originally filed this lawsuit in Texas state court, asserting a breach-of-contract cause of action against Transamerica stemming from her claim to the Policy's proceeds. On December 30, 2020, Transamerica timely removed the action to this Court and filed an interpleader counterclaim joining two parties who also claimed an interest in the life insurance proceeds—Ricardo and AXA.[2]

Mireles-Poulat, individually and as trustee of the SILI Trust, filed crossclaims against Ricardo and AXA, in which she sought declarations that she, as trustee of the SILI Trust, is the Policy's beneficiary and that no other party is entitled to Policy proceeds. AXA has filed a crossclaim for declaratory relief, seeking, among other things, a declaration that it is entitled to the life insurance proceeds because Samy used funds from AXA's loan to make "some of the premium payments." Dkt. 17 at 4.

In January 2022, Mireles-Poulat moved for summary judgment against AXA.[3] According to Mireles-Poulat, life insurance proceeds are statutorily exempt from AXA's claims. *See* Dkt. 54 at 8–10. But even if the proceeds were not exempt, Mireles-Poulat argues there is no evidence that funds from AXA's loan were used to make premium payments on the Policy. *See id.* at 11–13.

---

[2] The Court granted Transamerica interpleader relief on November 24, 2021, instructing it to deposit the Policy's proceeds into the registry of the Court. *See* Dkt. 53. After doing so in December 2021, Transamerica was dismissed from the case. *See id.*

[3] As noted, Mireles-Poulat separately moved for summary judgment against Ricardo. I recommended that summary judgment be granted in Mireles-Poulat's favor on Ricardo's claim to the life insurance proceeds, *see Mireles-Poulat*, 2022 WL 658771, at *6. District Judge George C. Hanks, Jr. subsequently adopted my memorandum and recommendation. *See Mireles-Poulat v. Transamerica Life Ins. Co.*, No. 4:20-CV-04373, 2022 WL 980272, at *1 (S.D. Tex. Mar. 31, 2022).

## LEGAL STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A dispute of material fact is "genuine" if the evidence would allow a reasonable jury to find in favor of the non-movant. *See Rodriguez v. Webb Hosp. Corp.*, 234 F. Supp. 3d 834, 837 (S.D. Tex. 2017). The moving party bears the burden of identifying those portions of the record it believes demonstrate the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). This does not, however, require that the movant negate the elements of the non-movant's case. *See Boudreaux v. Swift Transp. Co.*, 402 F.3d 536, 540 (5th Cir. 2005).

If the burden of proof at trial lies with the non-moving party, the movant may satisfy its initial burden "by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Celotex*, 477 U.S. at 325. *See Nola Spice Designs, L.L.C. v. Haydel Enters.*, 783 F.3d 527, 536 (5th Cir. 2015) ("Where the non-movant bears the burden of proof at trial, the movant may merely point to the absence of evidence and thereby shift to the non-movant the burden of demonstrating by competent summary-judgment proof that there is an issue of material fact warranting trial." (quotation omitted)). Once the moving party has demonstrated the absence of a material fact issue, the non-moving party must go beyond the pleadings and designate specific facts and evidence in the record and articulate how they support the party's claim(s). *See Boudreaux*, 402 F.3d at 540; FED. R. CIV. P. 56(c)(1). "This burden will not be satisfied by some metaphysical doubt as to the material facts, by conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence." *Boudreaux*, 402 F.3d at 540 (quotation omitted).

In deciding a motion for summary judgment, I must "view the evidence and the inferences to be drawn therefrom in the light most favorable to the non-moving party." *Brown*, 337 F.3d at 541. I must also resolve factual controversies in favor

of the non-moving party. *See Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994). However, "where critical evidence is so weak or tenuous on an essential fact that it could not support a judgment in favor of the nonmovant," I must grant summary judgment for the moving party. *Boudreaux*, 402 F.3d at 540 (quotation omitted).

## ANALYSIS

Texas law generally exempts life insurance proceeds from the claims of creditors. *See* TEX. INS. CODE § 1108.051(b) ("Notwithstanding any other provision of this code, insurance or annuity benefits . . . are fully exempt from: (A) garnishment, attachment, execution, or other seizure; (B) seizure, appropriation, or application by any legal or equitable process or by operation of law to pay a debt or other liability of an insured or of a beneficiary . . .; and (C) a demand in a bankruptcy proceeding.").

There is, however, a statutory exemption which allows a creditor to recover premium payments made in fraud of a creditor. *See id.* § 1108.053(1) (exempting "[a] premium payment made in fraud of a creditor, subject to the applicable statute of limitations for recovering the payment."). Based on this statutory language that limits recovery to premium payments made in fraud, Mireles-Poulat asserts that AXA is limited to recovering, at most, the $49,512 of insurance premiums AXA avers were made with loan proceeds.

AXA takes a different tack, claiming that it is entitled to a portion of the Policy's $3 million death benefit.[4] In advancing this argument, AXA relies on a 1995 Texas appellate court decision holding that "a person who wrongfully uses stolen or fraudulently obtained funds to purchase an insurance policy shall hold that policy and its proceeds in trust for the benefit of the one from whom the funds were stolen or taken." *Marineau v. Gen. Am. Life Ins. Co.*, 898 S.W.2d 397, 401

---

[4] AXA claims that it "is entitled to recover approximately 20% of the proceeds payable under the Policy"—roughly $600,000—based on its claim that "approximately 20% of the Policy was paid for with funds fraudulently obtained from AXA." Dkt. 64 at 6.

(Tex. App.—Fort Worth 1995, writ denied). *See also id.* at 403 (holding that the owner of funds wrongfully obtained is "entitled to a pro rata share of the life insurance policy proceeds where the wrongfully acquired funds were partially used to pay the premiums"). "This may be true even where a statute protects the proceeds of insurance policies from actions by creditors." *Id.* at 401.

Mireles-Poulat contends that *Marineau* was superseded in 2003 by the Texas Legislature's enactment of § 1108.053, which she argues limits recovery to *premium payments* made with fraudulently obtained funds. Regardless of whether Mireles-Poulat's interpretation is correct, there is no question that for me to find AXA is entitled to *any* recovery, AXA must first show that fraudulently obtained funds were used to purchase the Policy (i.e., make premium payments). *See id.* at 400 ("A plaintiff seeking to recover embezzled funds has the initial burden to trace the embezzled funds into specific property."). *See also Paschal v. Great W. Drilling, Ltd.*, 215 S.W.3d 437, 456 (Tex. App.—Eastland 2006, pet. denied) ("Money is subject to conversion only when it can be identified as a specific chattel and not where an indebtedness may be discharged by the payment of money generally."). Here, AXA conveniently assumes that Samy used the loan proceeds to make two premium payments because those payments occurred "[s]hortly after" AXA loaned money to Paragroup. Dkt. 64 at 4. But as Mireles-Poulat correctly notes, "there is absolutely no evidence whatsoever of the *source of the money* used" to make those premium payments. Dkt. 68 at 8 n.2.

AXA's case rests on nothing more than speculation and conjecture. AXA's failure to produce any evidence, documentary or otherwise, indicating that the loan proceeds were used to make premium payments dooms its case. *See Brown v. City of Houston*, 337 F.3d 539, 541 (5th Cir. 2003) ("Unsubstantiated assertions, improbable inferences, and unsupported speculation are not sufficient to defeat a motion for summary judgment.").[5] After carefully reviewing the summary-

---

[5] As an aside, Mireles-Poulat objects on a number of grounds to all of AXA's exhibits (A–H) offered in response to the motion for summary judgment. I deny these objections as moot because "this

judgment record, I am convinced that it would be impossible for a fact-finder, absent surmise or speculation, to trace the use of the AXA loan proceeds to the payment of the Policy premiums. As a result, AXA is not entitled to any recovery—whether it be premiums made on the Policy or proceeds paid under the Policy. Summary judgment is appropriate in favor of Mireles-Poulat.

## CONCLUSION

For the reasons discussed above, I recommend that Maria Luisa Mireles-Poulat's Motion for Summary Judgment Against AXA (Dkt. 54) be **GRANTED**.

The Clerk shall provide copies of this Memorandum and Recommendation to the respective parties who have 14 days from the receipt to file written objections pursuant to Federal Rule of Civil Procedure 72(b) and General Order 2002–13. Failure to file written objections within the time period mentioned shall bar an aggrieved party from attacking the factual findings and legal conclusions on appeal.

SIGNED this 20th day of April 2022.

ANDREW M. EDISON
UNITED STATES MAGISTRATE JUDGE

---

evidence does not affect the disposition of the summary judgment motion." *Lilly v. SSC Houston Sw. Operating Co. LLC*, No. 4:20-CV-03478, 2022 WL 35809, at *3 n.2 (S.D. Tex. Jan. 4, 2022). *See also Banks v. Bell Helicopter Textron, Inc.*, No. 4:10-CV-653-Y, 2011 WL 13291576, at *4 (N.D. Tex. Nov. 4, 2011) ("Bell also raises objections to Banks's summary-judgment evidence. But because Bell is entitled to judgment as a matter of law even considering the objected-to evidence, the Court overrules Bell's objections as moot."); *Jones v. United Parcel Serv., Inc.*, No. 3:06-CV-1535-L, 2008 WL 2627675, at *6 (N.D. Tex. June 30, 2008) (denying objections to summary-judgment evidence as moot because the evidence was "not central to the court's conclusions, and sustaining the parties' objections would not change the result").